Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>ANA LUISA GONZÁLEZ CABRERA<br>Peticionaria | KLCE202400038<br><br>cons. con<br><br>KLCE202400126 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Crim. Núm.<br>E FJ2023G0006<br>E EG2023G0002<br>E OP2023G0016<br><br>Sobre:<br>ART. 244 CP<br>ART. 260 CP<br>ART. 281 CP |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Jueza Aldebol Mora

Adames Soto, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de mayo de 2024.

Tenemos ante nuestra consideración dos recursos de *certiorari*, instado el primero por la señora Ana Luisa González Cabrera, (señora González Cabrera o la defensa), el cual es identificado con el alfanumérico KLCE202400038, y el segundo por el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, (el Procurador, el Pueblo o el Ministerio Público, según aplique), al que nos referiremos con el alfanumérico KLCE2024000126. En ambos recursos se cuestionan sendas determinaciones interlocutorias emitidas en el caso criminal que se sigue en contra de la primera, relativas al proceso de descubrimiento de prueba en curso, que hacen susceptible su consolidación, según ya ordenamos mediante *Resolución* de 5 de febrero de 2024.

a.

NÚMERO IDENTIFICADOR

SEN2024_____

Por hechos ocurridos entre el 1 y el 30 de noviembre de 2022, el Ministerio Público presentó contra la señora González Cabrera y el señor Juan Enrique Catalá Suárez (señor Catalá Suárez), denuncias por presuntas violaciones a los Artículos 244, 260 y 281 del Código Penal de Puerto Rico, 33 LPRA secs. 5334, 5351 y 5374, sobre conspiración, oferta de soborno e impedimento o persuasión de incomparecencia de testigos, respectivamente.

Llamando la atención particularmente hacia los datos procesales concernientes al caso ante nosotros, una vez fue determinada *Causa* para arrestar[1] por los delitos imputados, y posteriormente también *Causa* para acusar[2] sin variación en los delitos, el Ministerio Público presentó las respectivas acusaciones en contra de la señora González Cabrera lo que marcó el inicio del proceso de descubrimiento de prueba, según es concebido por la Regla 95 de Procedimiento Criminal[3], (Regla 95 en adelante, cuando no aludamos en específico a algún inciso de esta).

A tenor, el 12 de julio de 2023, la señora González Cabrera presentó una *Moción de descubrimiento de prueba bajo la Regla 95 de Procedimiento Criminal.* En lo pertinente, solicitó copia de todos los mensajes de texto, audios, videos intercambiados entre los testigos de cargo o con los coacusados, así como la información extraída por la Agte. Ignerí Negrón Rivera (agente Negrón Rivera) de los celulares de los testigos de cargo, junto con el informe de análisis realizado sobre esa extracción. Específicamente, esta solicitó en el segundo inciso de su moción, lo siguiente:

> u. Copia de todos los mensajes de texto, [...] enviados por la acusada a cualquiera de los testigos de cargo.
> v. Copia de todos los mensajes de texto, [...] enviados por el Sr. Juan Catalá a cualquiera de los testigos de cargo.
> w. Copia de todos los audios o videos enviados por la acusada a cualquiera de los testigos de cargo [...].

---

[1] Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.
[2] Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II R. 23.
[3] Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R. 95.

    x. Copia de todos los audios o videos enviados por el Sr. Juan Catalá a cualquiera de los testigos de cargo [...].

    y. Copia de todos los mensajes de texto, [...] enviados a la acusada por cualquiera de los testigos de cargo.

    z. Copia de todos los mensajes de texto, [...] enviados al Sr. Juan Catalá por cualquiera de los testigos de cargo.

aa. Copia de todos los audios o videos enviados por cualquiera de los testigos de cargo a la acusada [...].

bb. Copia de todos los audios o videos enviados por cualquiera de los testigos de cargo al Sr. Juan Catalá [...].

cc. Copia de cualesquiera audios, videos, mensajes o textos escritos intercambiados entre sí, por cualquiera de los testigos de cargo Gianka Cuadrado Díaz, Jazmín Gómez Reyes, Mari Luz Torres Reyes, Alondra Dávila Reyes, Orlando Centeno Cruz y Yanika Vargas Cruz, [...], que de alguna manera se encuentren relacionados a los hechos y las causas que se siguen en el presente caso.

dd. Copia de toda la información y de todos los audios, videos, textos, chats o mensajes de cualquier tipo extraídos por la Agente Ignerí Negrón Rivera, la División de Crímenes Cibernéticos o la Policía de Puerto Rico, o por encomienda del Ministerio Público, de los celulares ocupados a cualquier testigo de cargo, incluyendo a las testigos Gianka Cuadrado Díaz, Jazmín Gómez Reyes y Mari Luz Torres Reyes y/o cualquiera de sus hijos y familiares, que de alguna manera se encuentren relacionados a los hechos y las causas que se siguen en el presente caso.

. . . . . . . . . . . . . . . . . . . . . . . .

mm. Copia de todos los mensajes, videos o audios recibidos por Jazmín Gómez Reyes [...] que contenga amenazas a su seguridad en el periodo comprendido entre los meses de marzo y diciembre de 2022.

nn. Copia de todos los mensajes [...] recibidos por Jazmín Gómez Reyes el día 30 de noviembre de 2022 en relación a su comparecencia a la vista señalada en el Tribunal Superior de Humacao en los casos criminales H1VP202201089 al H1VP202201096.

pp. Copia de todos los textos (...) intercambiados entre el Agente Miguel A. Sánchez Rivera, Placa 96945, con cualquiera de los testigos de cargo Jazmín Gómez Reyes, Gianka Marie Cuadrado Díaz, Mari Luz Torres Reyes, Yanilka Vargas Cruz, Alondra Díaz Reyes y Orlando Centeno Cruz.

A raíz de lo cual, el 14 de julio de 2023, el foro primario emitió y notificó una *Resolución*, en la que ordenó al Ministerio Público descubrir una parte de los requerimientos hechos por la peticionaria, pero no accedió a la solicitud de ordenar la producción de lo incluido en los incisos 2e, 2k, 2u, 2v, 2w, 2x, 2y, 2z, 2aa, 2bb, 2cc, 2dd, 2ll, 2mm, 2nn, 2oo, 2pp y 2qq[4].

---

[4] Apéndice del recurso de *certiorari*, KLCE2024001266, págs. 27-32.

Inconforme, el 18 de julio de 2023, la señora González Cabrera solicitó la reconsideración de los requerimientos de prueba que le fueron denegados[5].

Mientras tanto, el 19 de julio de 2023, el Ministerio Público sometió su contestación a la moción de descubrimiento de prueba[6], aduciendo haber entregado a la defensa de la señora González Cabrera los documentos que formaban parte del sumario fiscal, entre los cuales se encontraba el informe de extracción de los celulares de los testigos de cargo. Sobre esto último afirmó que en las referidas extracciones de los teléfonos de los testigos de cargo ya entregadas obraba íntegramente el contenido de los aludidos aparatos telefónicos y, sobre los mensajes entre la señora Gómez Reyes y el agente Miguel Sánchez Rivera (agente Sánchez Rivera), sostuvo que del testimonio de esta no surgía que el agente Sánchez Rivera le hubiese enviado mensajes de texto a través del teléfono u otra plataforma de mensajería.

El 19 de julio de 2023 se celebró una vista argumentativa para atender los asuntos planteados por las partes sobre el descubrimiento de prueba, determinando el foro primario que los resolvería por escrito. Luego, el mismo foro dos *Órdenes,* una disponiendo que la moción de reconsideración presentada por la señora González Cabrera que estaba pendiente se adjudicaría luego de que esta constatara si el Ministerio Público le adeudaba algo[7], y la otra denegando la solicitud de desglose presentada por el Ministerio Público[8].

Entonces, el 26 de julio de 2023, el TPI emitió una *Resolución* en la que atendió específicamente temas relativos a la solicitud de la defensa sobre descubrir información proveniente de los celulares de las terceras

---

[5] *Íd,* págs. 33-43.
[6] *Íd,* págs. 47-55.
[7] *Íd,* pág. 55.
[8] Copia de la referida moción de desglose ubica en el apéndice del recurso de *certiorari* KLCE2024001266, págs. 45-46.

personas testigos del Pueblo, con el *caveat* de que una subparte de dicho requerimiento hacía referencia también al celular de un coacusado. Sobre este tema el foro recurrido procedió a citar *in extenso* la jurisprudencia del Tribunal Supremo Federal y el Tribunal Supremo de Puerto Rico concerniente a la expectativa a la intimidad reconocida a la información contenida en los celulares, aludiendo a *Riley v. California*, 573 US 373 (2014), y *Weber Carrillo v. ELA*, 190 DPR 688 (2014).

Con relación a la *Moción de reconsideración* presentada por la señora González Cabrera que seguía pendiente por resolver, el TPI se reiteró en su denegatoria de autorizar su descubrimiento, *hasta tanto haya una demostración prima facie convincente de la pertinencia de esa prueba y la legitimidad de la petición[9]*.

Posterior al TPI haber atendido otros asuntos sobre el descubrimiento de prueba, (no pertinentes a la controversia ante nosotros), fue celebrada una vista, según se hizo constar en la *Minuta* de 24 de agosto de 2023, donde la señora González Cabrera esgrimió que no se había completado la entrega de lo solicitado en la Regla 95, mientras que el Ministerio Público afirmó haber entregado toda la prueba que surgía del Sumario Fiscal. Por cuanto tales alegaciones dieron lugar a una extensa argumentación de las partes, el tribunal *a quo* ordenó que todas las solicitudes bajo la Regla 95 habrían de ser expuestas por escrito, y de esa misma manera serían resueltas.

Valga resaltar de la referida vista, además, que el juez que la presidió volvió a prestar gran atención a la controversia sobre la solicitud de extracción del teléfono de la testigo del Ministerio Público, hecha por la defensa, permitiendo amplio espacio para que las partes argumentaran sobre el asunto, y participando activamente a su vez de la discusión[10]. A

---

[9] Apéndice del recurso de *certiorari* KLCE2024001266, págs. 65-68.
[10] En el recurso *certiorari* KLCE2024001266 fue incluido un CD que contiene la grabación de la vista aludida.

modo de resumen, de la referida argumentación allí acontecida surge que el juez estableció, sin ambages, **que resultaba necesaria la ayuda pericial para determinar los asuntos relativos a la extracción del teléfono solicitada y las condiciones en que esto podría acontecer**, de ser concedida la solicitud de la defensa. En específico, ante el requerimiento de la peticionaria para que se le permitiera trasladar el teléfono o el *chip* hasta el laboratorio de su perito para ser examinado, el juez reiteró que **tal asunto debía pasar antes por el crisol del testimonio pericial**, (pues los abogados de la peticionaria, ni el Ministerio Público, estarían en posición de dilucidar el asunto). Sobre lo mismo, el juez, *motu proprio*, levantó una preocupación sobre la posibilidad de que el traslado del teléfono pudiera alterar la integridad de dicha evidencia digital, lo que a su vez podría provocar problemas probatorios sobre su admisión como prueba. En definitiva, el juez que presidió la sala determinó lo siguiente:

(1) que los peritos de las partes se reunieran, hablaran y se entendieran para ver si el tribunal no tenía que entrar a adjudicar la controversia (sobre la extracción del celular);

(2) dejó pautada una vista para el 7 de septiembre 2023 sobre el estado de los procedimientos, en la cual adjudicaría la controversia sobre la extracción del celular.

El día antes de la vista sobre el estado de los procedimientos pautada, el 6 de septiembre de 2023, la señora González Cabrera presentó una *Moción solicitando orden sobre descubrimiento de prueba.* En lo referente a los asuntos incluidos en el KLCE202400126, esta parte solicitó al Tribunal que expidiera una orden para que le permitiera examinar y extraer información del celular de la señora Gómez Reyes, que estaba en posesión del Ministerio Público. Como fundamento para lo solicitado adujo que tal curso de acción era necesario a los fines de corroborar la integridad y confiabilidad de las extracciones realizadas al referido celular por el Departamento de Justicia, lo que incluía obtener información pertinente al presente caso que no formaba parte del informe sobre las extracciones

puesto a disposición. Para este fin, aseveró haber contratado un equipo de peritos.   De igual forma afirmó que en el informe entregado por el Ministerio Público, relativo al contenido del referido celular, no fueron incluidos todos los mensajes entre la señora Gómez Reyes y las demás testigos de cargo.

Además, en la misma moción de descubrimiento la señora González Cabrera solicitó, relativo al KLCE20400038, lo siguiente: (1) la declaración jurada de la testigo de cargo Mary Lou Torres Reyes, aduciendo que había sido utilizada en la vista de causa para arrestar, aunque no en la vista preliminar, y el Ministerio Público se negaba a entregarla; (2) que el Ministerio Público especificara la prueba objetiva o documental que se proponía usar como evidencia de cargo en el juicio en su fondo.

Llegada la fecha en que fue pautada la *Vista sobre el estado de los procedimientos*, el 7 de septiembre de 2023, el juez que a ese momento había atendido los asuntos hasta aquí discutidos, Hon. Daniel R. López González, informó la asignación de otro juez, Hon. Rafael E. Taboas Dávila, para continuar con los procedimientos del caso. Según la *Minuta*[11] donde se recogieron las incidencias de esta vista, la representación legal de la señora González Cabrera adujo que el Juez López ya había decidido que se permitiera a sus peritos tener acceso a los teléfonos. Sobre esto mismo, la defensa informó que sus peritos estaban presentes en el Tribunal ese día, junto al perito del Estado, para ver cómo podían determinar la extracción. La Fiscal en sala aseveró, por su parte, que la vista era para que los peritos se reunieran, pues el Juez López había indicado que, a pesar de todas las veces que había dialogado con los peritos contratados (por la defensa), por no tener conocimiento cibernético no podían ponerlo en posición de facilitar la comunicación. Como resultado, el juez Taboas Dávila ordenó a las partes a reunirse junto con los peritos y someter por

---

[11] Apéndice del recurso de *certiorari* KLCE2024001266, págs. 91-92.

moción cualquier situación. Por último, la defensa reiteró su alegación de que el Ministerio Público no había cumplido con la Regla 95, y este último insistió en lo contrario.

Entonces, en el mismo día de la vista aludida, la señora González Cabrera presentó una *Moción informativa sobre acuerdo de peritos,* suscrita tan solo por su representación legal. Se sostuvo allí que los peritos de las partes habían acordado que la extracción de información se llevaría a cabo el 27 de septiembre de 2023, desde las 8:00 de la mañana, en las facilidades físicas de los peritos de la defensa, lugar a donde la perito del Ministerio Público llevaría el celular. En atención a ello, la señora González Cabrera solicitó que se acogiera lo informado y se emitiese una orden acorde con ello.

En respuesta, el Ministerio Público presentó una *Urgente réplica a "Moción informativa sobre acuerdo de peritos" y otros extremos.* Aunque en esta moción aceptó que los peritos de las partes se habían reunido, adujo haberle informado a la defensa que no era correcto presentar una moción con tal información, pues el Pueblo no se había allanado a la extracción de los equipos electrónicos, y el Tribunal aún no había autorizado la referida extracción. Además, el Ministerio Público se reiteró en su afirmación de que lo entregado a la defensa era copia íntegra de las extracciones realizadas a los celulares de los testigos de cargo, para entonces elaborar sobre los siguientes asuntos: que los celulares contenían información que gozaba de la protección constitucional por el derecho a la intimidad y ataques abusivos a su honra, reputación y la vida privada o familiar; que la defensa no había cumplido con el estándar de necesidad ni pertinencia que requiere la Regla 95(e) de Procedimiento Criminal, *supra,* tratándose la solicitud de una expedición de pesca.

Además, el 12 de octubre de 2023, el Estado presentó una *Moción en oposición a "Moción solicitando [sic] orden sobre descubrimiento de*

*prueba".* En lo relativo la controversia alzada en el KLCE202300038, el Ministerio Público adujo, apoyándose en *Pueblo v. Rodríguez López*, 155 DPR 894 (2001), que la testigo cuya declaración jurada solicitaba la defensa no había testificado aún, por tanto, no procedía entregarla todavía. Con referencia a la solicitud de la defensa para que el Pueblo especificara qué prueba objetiva o documental se disponía a utilizar en el juicio, sostuvo que tal pretensión no encontraba fundamento en nuestro ordenamiento jurídico.

En la *Moción* del Ministerio Público bajo discusión esta parte también esgrimió, en lo pertinente a la extracción de los celulares, (asunto que refiere a la controversia contenida en el KLCE202401266), que la alegada falta de confianza de la defensa sobre la pureza de los procedimientos investigativos del Departamento de Justicia no era suficiente en derecho para justificar emitir una orden que permitiera la extracción. De igual forma sostuvo que el análisis de la evidencia digital se hizo por un perito, conforme a las mejores prácticas científicas sobre el tema, y que no había fundamento que estableciera que el Ministerio Público estaba ocultando prueba pertinente sobre el teléfono de la señora Gómez Reyes.

Así las cosas, el 12 de octubre de 2023 fue celebrada una *Vista sobre status conference*, cuyas incidencias quedaron plasmadas en una *Minuta*[12]. Surge de lo recogido en la extensa *Minuta*, que las partes tuvieron allí amplia oportunidad para, una vez más, discutir a fondo una variedad de asuntos pendientes relacionados a la Regla 95. Entre tales asuntos discutidos, se elaboraron planteamientos sobre la solicitud de la defensa para descubrir la declaración jurada de la testigo de cargo Mary Lou Torres Reyes y la petición para que el Ministerio Público especificara la prueba que se disponía a utilizar en el juicio, controversias que

---

[12] Apéndice del recurso de *certiorari* KLCE2024001266, págs. 114 – 130.

conciernen al KLCE202400038. No obstante, el foro recurrido decidió atender tales disputas mediante un escrito posterior, al cual aludiremos en los próximos párrafos.

También, en la misma *Minuta*, pero en lo pertinente a la controversia pendiente sobre la extracción del celular, luego de que a las partes se le concediera amplio espacio de su discusión, el TPI expresó; *para que las partes estén claras, ordena la extracción, aunque entiende que el Hon. Daniel R. López González lo había ordenado, pero el (sic) en la mañana de hoy se reitera. Además, se ordena la reunión que no se llevó a cabo el 27 de septiembre de 2023, para que los peritos se reúnan e informen como se va a hacer[13].*

Este dictamen interlocutorio respecto al tema de la extracción en favor de la defensa dio lugar a que el Ministerio Público presentara una *Moción de reconsideración* ante el mismo foro recurrido, que resultó denegada. Ante lo cual, el Procurador acudió ante nosotros, mediante el recurso de *certiorari* identificado como KLCE202400126, haciendo los siguientes señalamientos de error:

> El Tribunal de Primera Instancia erró y abusó de su discreción al autorizar un descubrimiento de prueba injustificado y en completa abstracción al texto expreso de la Regla 95 de Procedimiento Criminal que exige que la defensa demuestre la pertinencia, materialidad y necesidad de que el Ministerio Público le entregue a la defensa el teléfono celular de una testigo de cargo para que estos realicen una <u>nueva</u> extracción e imagen forense en *<u>sus</u>* oficinas, a pesar de que la imagen forense del referido teléfono ya extraída por el Ministerio Público se ha puesto a su disposición y estos no la han revisado.

> El Tribunal de Primera Instancia erró y abusó de su discreción cuando ordenó la nueva extracción del contenido del celular, ***sin*** establecer los términos y las condiciones justa y necesarias para proteger la integridad de la evidencia, así como el derecho a la intimidad de la testigo de cargo.

Más adelante, el 12 de diciembre de 2023, el TPI emitió otra *Resolución* que, en lo pertinente, dispuso: (1) declarar *No Ha Lugar* la

---

[13] *Íd.*, pág. 129.

solicitud de la señora González Cabrera para que el Ministerio Público le descubriera la declaración jurada de la testigo Mary Lou Torres Reyes, pues dicha testigo no ha estado sujeta a contrainterrogatorio, y el foro primario le concederá amplia oportunidad a la defensa para prepararse cuando corresponda contrainterrogarla, una vez declare en el juicio; (2) denegar la petición de la defensa para que se ordenara al Pueblo a especificar qué prueba se disponía a utilizar en el juicio.

En desacuerdo, la señora González Carrera acudió ante nosotros mediante el recurso de *certiorari* identificado como KLCE2024000038, esgrimiendo los siguientes errores:

> Primer error: erró el Tribunal de Instancia al no ordenar al Ministerio Público a que conforme a la Regla 95(a)(2) de las de Procedimiento Criminal le entregue a la defensa una declaración jurada de cierta testigo que declaró en la vista de determinación de causa para arresto.

> Segundo error: erró el Tribunal de Primera Instancia al no ordenar al Ministerio Público a que conforme a la Regla 95(a)(4) de las de Procedimiento Criminal especifique la prueba objetiva o documental que se propone utilizar como evidencia de cargo en el juicio del presente caso.

Concedida oportunidad a las partes para oponerse a los respectivos recursos de *certiorari*, y luego de estas comparecer, estamos en posición de resolver.

c.

Por cuanto los asuntos discutidos en el KLCE202400038 los tildamos de fácil solución, iniciaremos ocupándonos de estos.

Con respecto al primer señalamiento de error alzado por la señora González Cabrera, esta afirma que el TPI debió ordenar al Ministerio Público descubrir la declaración jurada de la señora Mary Lou Torres Reyes, testigo del Pueblo, aduciendo que tal acción resulta autorizada por la Regla 95(a)(2) de Procedimiento Criminal[14]. Llama nuestra atención esta misma parte a que nos fijemos en que la regla procesal aludida manda al

---

[14] 34 LPRA Ap. II, R. 95(a)(2).

Ministerio Público a proveer copia a la defensa de *cualquier declaración jurada de los testigos de cargo* **que hayan declarado** *en la vista para determinación de causa probable para arresto o citación.* (Énfasis provisto). A partir de esto, la señora González Cabrera impulsa la tesis de que, por cuanto la declaración jurada de la referida testigo fue utilizada por el Ministerio Público al celebrarse la vista de causa para arresto, se debe entender que ya *declaró*. Dicho de otra manera, la señora González Cabrera aspira a que interpretemos que la sola presentación de la referida declaración jurada ante el TPI por el Ministerio Público en la vista de Regla 6, *supra,* se considere como que la testigo ya *declaró,* para fines del requisito impuesto en la Regla 95(a)(2).

Sin embargo, la teoría legal de la defensa tropieza con el hecho de que la Regla 95(a)(2) citada ha sido ya interpretada por nuestro Tribunal Supremo, precisamente para establecer cuándo debemos considerar que un testigo *ha declarado,* a los fines de obligar al Ministerio Público a que descubra la declaración jurada. Así, en *Pueblo v. Arzuaga,* 160 DPR 520, 532-533 (2003), ese alto Foro pautó, en lo pertinente, lo siguiente:

> En resumen, hemos examinado dos instancias en las que se activa el derecho del imputado a recibir las declaraciones juradas en poder del Ministerio Fiscal. La primera de ellas es corolario del derecho del acusado a contrainterrogar a los testigos en su contra y ocurre antes de la presentación del pliego acusatorio, cuando los testigos **se sientan a declarar** en la etapa de vista preliminar. La segunda surge tan pronto como se presenta el pliego acusatorio, momento en el cual el acusado podrá solicitar las declaraciones de los testigos **que se sentaron a declarar** en la vista *adversativa* de determinación de causa probable para arresto o en la vista preliminar. Sin embargo, **si se trata de testigos que el fiscal <u>no ha sentado a declarar</u> en ninguna de las etapas previas a la presentación del pliego acusatorio, entonces,** *y como norma general,* **el imputado tendrá que esperar hasta el acto del juicio para obtener estas declaraciones; las podrá solicitar una vez finalice el examen directo y antes de que dé inicio el contra interrogatorio**. E.L. Chiesa Aponte, *Procedimiento Penal,* 68 Rev. Jur. U.P.R. 241, 250 (1999).
>
> (Énfasis y subrayado provistos).

De lo que se sigue que, por cuanto la testigo Mary Lou Torres Reyes aún no se ha ***sentado*** *a declarar,* tampoco ha nacido el derecho de la defensa a que el Ministerio Público le descubra la declaración jurada que esta suscribió[15]. La acción *sentarse a declarar* en el contexto discutido, excluye la posibilidad de interpretar que la sola presentación de la declaración jurada de la testigo en la vista de Regla 6, *supra*, sin que Mary Lou Torres Reyes se *sentara* en la silla de los testigos a declarar, activara el derecho de la defensa a descubrir la declaración jurada[16]. En definitiva, contrario a lo impulsado por la señora González Cabrera, no cabe asemejar la sola presentación de la declaración jurada en la vista de Regla 6, *supra*, con el acto de que un testigo se siente a declarar.

En el segundo señalamiento de error la señora González Cabrera nos convoca a identificar en el contenido de la Regla 95(a)(4) de Procedimiento Criminal, un fundamento para exigirle al Ministerio Público que revele la prueba documental, objetiva o material, que se propone a utilizar como evidencia de cargo en el juicio. Es decir, la defensa arguye que el Ministerio Público está obligado por la referida regla procesal a precisar del total de la prueba descubierta, la que va a utilizar en el juicio. Hinca su argumento esta parte en la afirmación de que la prueba descubierta por el Ministerio Público consta de más de dos mil páginas de

---

[15] En la Opinión citada también se contempla la posibilidad de que la defensa obtenga la declaración jurada de un testigo de cargo, aunque no se hubiese sentado a declarar, cuando se demuestre afirmativamente que dicho documento con toda probabilidad contiene evidencia exculpatoria o relevante a su inocencia o castigo. También se podría plantear el descubrimiento de la declaración jurada antes del testigo sentarse a declarar, pero hubiese correspondido a la acusada demostrar unas circunstancias especiales con apoyo en el debido proceso. *Pueblo v. Irrizary Quiñonez,* 160 DPR 544 (2003). Sin embargo, un argumento a tales efectos no fue levantado por la señora González Cabrera ante el TPI, ni ante nosotros, y de aquí que no nos hubiésemos detenido a considerarlo.

[16] A pesar de lo que afirmamos, hacemos constar que los tres jueces suscribientes juzgamos que el tiempo es maduro para considerar legislación dirigida a que se permita el descubrimiento de las declaraciones juradas de los testigos del Ministerio Público a la defensa, una vez se iniciado el descubrimiento de prueba, sin necesidad de que estos se hubiesen *sentado a declarar* en etapas previas, ni esperar hasta después que declaren en el juicio y se tengan que interrumpir los procesos para darle oportunidad a la defensa de prepararse para contrainterrogar. Claro, en casos que se requiera velar por alguno de los privilegios probatorios, por seguridad del Estado, u otras causas justificadas que el Ministerio Público, se podría hacer excepción a esto. No obstante, reiteramos, el curso a seguir al momento sobre la controversia planteada está bien definido, y es el expuesto.

documentos y, tan abultada documentación, debió justificar la intervención del Tribunal para ordenar que el Ministerio Público precisara la que verdaderamente se dispone a utilizar en el juicio.

Al plantear lo anterior, la señora González Cabrera cita el segmento de la Regla 95(a)(4) donde se ordena descubrir cierta prueba que allí se describe, para entonces poner el acento en la expresión que le sigue inmediatamente, *que el Ministerio Público **se propone utilizar en el juicio**...* Según ya dijimos, esta parte interpreta la expresión ennegrecida que precede como un requerimiento al Ministerio Público de que especifique la prueba a utilizar en el juicio. Aunque admite que en la jurisprudencia local no hay una interpretación de esta regla en los términos que promueve, aduce que la Regla 16(a)(1)(E) de Procedimiento Criminal Federal, y la doctrina prevaleciente en foro federal que cita, requieren que el Ministerio Público identifique la evidencia documental u objetiva que se propone a utilizar en el juicio en contra del acusado, lo que debería resultar extraíble a nuestra jurisdicción.

Coincidimos con la señora González Cabrera al afirmar que no contamos con una interpretación de nuestras reglas de los procesos criminales por nuestro Tribunal Supremo a los efectos sugeridos en el párrafo que antecede, pero, añadimos, tampoco apreciamos visos de que el alto Foro se incline a ello.

La cláusula del debió proceso de ley obliga al Ministerio Público a revelar a la defensa toda evidencia que tenga en su poder que sea favorable al acusado, ya sea con relación a la culpabilidad o al castigo. E.L. Chiesa Aponte, *Derecho procesal y penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. III, pág. 315, pero nada dicta sobre alguna obligación del Pueblo para que le revele a la defensa con precisión cuál de la prueba descubierta se dispone a utilizar durante el juicio. Es decir, la discusión alrededor de los contornos de la Regla 95 más bien discurre

sobre los límites al Ministerio Público para determinar qué prueba revelar pues, *no tiene que poner todos sus archivos a disposición de la defensa para que ésta busque evidencia favorable o exculpatoria.* E.L. Chiesa Aponte, *Derecho procesal y penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. II, pág. 33. Claro, ello ha de tener como punto de partida que nuestro sistema de justicia reconoce el derecho de toda persona a defenderse de una acusación criminal en su contra y a obtener, mediante descubrimiento de prueba, la evidencia que le favorezca. *Pueblo v. Arocho Soto*, 137 DPR 762 (1994); *Pueblo v. Santa-Cruz*, 149 DPR 223 (1999).

Lo cierto es que estamos desprovisto de legislación o jurisprudencia que sirvan para persuadirnos sobre la teoría legal sugerida por la señora González Cabrera, ante lo cual, solo nos queda reconocer que la denegatoria del TPI para exigirle al Ministerio Público precisar la evidencia que se propone a utilizar en el juicio, ubica dentro del ejercicio de su discreción en los procesos de descubrimiento de prueba. Según se sabe, los tribunales cuentan con una discreción que es inherente a su función de resolver los casos y controversias que llegan ante su consideración. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009).

En la misma tónica, nuestro Tribunal Supremo ha expresado que la concesión de los asuntos referentes a la solicitud de descubrimiento de prueba descansa en la facultad discrecional del tribunal que juzga el caso. *Pueblo v. Custodio Colón*, 192 DPR 567 (2015); *Pueblo v. Tribunal Superior*, 102 DPR 470 (1974). Además, la extensión del mecanismo ofrecido por la Regla 95 no se trata de un derecho absoluto del acusado, sino que descansa en la sana discreción del tribunal que debe considerar ciertos elementos al realizar un balance entre los derechos del acusado y el interés del Estado. *Pueblo v. Custodio Colón*, supra; *Pueblo v. Dones Arroyo* 106 DPR 303 (1977). Finalmente, es de particular importancia resaltar en este

caso la expresión de nuestro más alto Foro al indicar que, *a pesar de que hemos propiciado un amplio descubrimiento de prueba como instrumento básico para hallar la verdad,* ***lo anterior no es carta blanca que requiera que se realice de la forma en que una de las partes pretende, porque le resulta más fácil y conveniente.*** (Énfasis provisto). *Pueblo v. Vega*, 148 DPR 980, 991 (1999).

Entonces, una vez examinada la determinación del tribunal *a quo* al denegar la petición de la señora González Cabrera para que el Ministerio Público especificara la prueba que se dispone a presentar en el juicio, **no** encontramos que acontezcan o intervengan las circunstancias que nos habilitarían a revertir tal juicio discrecional. Nos adherimos así a la norma general que dicta que los tribunales apelativos no debemos intervenir con las determinaciones que realiza el foro primario sobre el descubrimiento de prueba, salvo aquellas instancias en que su actuación resulte arbitraria o constituya un abuso de discreción. *Pueblo v. Sanders Cordero*, 199 DPR 827 (2018), *Pueblo v. Custodio Colón*, supra. Por cuanto la determinación recurrida respecto a esta controversia particular no nos resulta arbitraria, ni observamos abuso de discreción, decidimos no intervenir con ella.

d.

Dirigiendo nuestra atención ahora al recurso de *certiorari* presentado por el Procurador General, KLCE20240126, este objeta la extracción del contenido del celular de la testigo del Pueblo, señora Gómez Reyes, ordenada por el TPI. Son varios los argumentos que se esgrimen para solicitarnos la revocación de dicha *Resolución*: que la defensa no cumplió con el requisito de demostrar la necesidad o relevancia de hacer una nueva extracción del celular, a pesar de que así lo requiere la Regla 95(e) de Procedimiento Criminal, 34 LPRA Ap. II, R. 95(e), basado su

reclamo en especulaciones y conjeturas; que entregar a la defensa el referido teléfono o su tarjeta de memoria atenta contra la integridad de la evidencia, máxime cuando el Tribunal no estableció ningún tipo de salvaguardas o medidas protectoras respecto a cómo se realizaría dicha extracción para asegurar los datos contenidos y la cadena de evidencia; que la búsqueda indiscriminada de toda la información contenida en el teléfono de la señora Gómez Reyes violaría su derecho a la intimidad, según la jurisprudencia le ha reconocido tal protección específica a los celulares.

A ello responde la defensa aduciendo que: bajo las Reglas 95(a)(3) y 95(a)(4) de Procedimiento Criminal, 34 LPRA Ap. II, R. 95(a)(3) y R. 95(a)(4) respectivamente, cuando las pruebas científicas u objetos tangibles cuyo descubrimiento se solicitan van a ser utilizados en el juicio por el Ministerio Público, no se requiere demostrar su relevancia como paso previo para autorizar que sean descubiertas; que la extracción del celular concedida por el TPI es la única manera que la defensa tiene para comprobar la integridad de la data allí contenida, máxime cuando tal confiabilidad ha sido cuestionada por encontrarse incompleta; que resulta necesario se le provea acceso de tal contenido a sus peritos para estar en igual condiciones ante dicha prueba que el Ministerio Público; que, luego de la extracción, el foro recurrido ordenó escuchar a los peritos de las partes para establecer las medidas o provisiones prudentes para evitar cualquier riesgo sobre el particular.

Iniciamos aseverando que, examinado con rigor el tracto procesal expuesto, resulta claro que, antes de la *Resolución* de 12 de octubre de 2023, notificada el 2 de noviembre del mismo año, el foro primario **no** había adjudicado la controversia sobre la petición de extracción del celular solicitada por la defensa, sino que ello solo ocurrió con el dictamen interlocutorio que se nos pide aquí revisar.

Aclarado lo anterior, comenzamos la discusión de los errores señalados dirigiendo nuestra atención a la Regla 95 de Procedimiento Criminal, que, en lo pertinente, dispone como sigue; a petición del acusado sometida en cualquier momento después de presentada la denuncia o acusación, el tribunal ordenará al Ministerio Fiscal que permita al acusado inspeccionar, copiar o fotocopiar material que se encuentre en posesión, control o custodia de la fiscalía. Entre los documentos u objetos que puede solicitar el acusado al Ministerio Público al amparo de esta regla se incluyen:

(1) Cualquier declaración jurada que el Ministerio Fiscal tenga del acusado.

(2) Cualquier declaración jurada de los testigos de cargo que hayan declarado en la vista para determinación de causa probable para el arresto o citación, en la vista preliminar, en el juicio o que fueron renunciados por el Ministerio Fiscal y los récords de convicciones criminales previas de éstos.

(3) Cualquier resultado o informe de exámenes físicos o mentales y de experimentos o pruebas científicas que sea relevante para preparar adecuadamente la defensa del acusado o que vaya a ser utilizado en el juicio por el Ministerio Fiscal.

(4) **Cualquier libro, papel, documento, fotografía, objeto tangible, estructura o lugar que sea relevante para preparar adecuadamente la defensa del acusado, que el Ministerio Fiscal se propone utilizar en el juicio o que fue obtenido del acusado o perteneciera al acusado.**

(5) El récord de convicciones criminales previas del acusado.

(6) Cualquier informe preparado por agentes de la Policía en relación con las causas seguidas contra el acusado que sea relevante para preparar adecuadamente la defensa del acusado.

(Énfasis provisto), 32 LPRA Ap. II, R. 95(a).

Más adelante, en la misma regla citada, pero en su inciso (e) se indica que; *toda información y/o material que se pretenda solicitar y **no esté enumerado en esta regla**, deberá venir acompañado de una explicación sobre la necesidad o pertinencia que tiene el mismo para la defensa del acusado.* (Énfasis provisto). 32 LPRA Ap. II, R. 95(e).

Como se nota, esta última regla, Regla 95(e), que cita el Procurador como la aplicable en la controversia sobre la extracción al celular, opera como cláusula residual para acoger aquella información o materiales que la defensa desea descubrir, **no previstos en los incisos de la Regla 95 que le preceden**. Por tanto, antes que acudir a la Regla 95(e) para determinar sobre qué prueba descubrir, se debe plantear si la prueba solicitada por la defensa encuentra acomodo en uno de los seis incisos que le precede, según descritos en la Regla 95(a). Hecho tal ejercicio, y contrario a lo que nos plantea el Procurador, juzgamos que la extracción de la información del celular solicitada como prueba a descubrirse por la defensa encuentra cabida en el inciso cuarto (4) de la Regla 95(a), sin que resulte necesario recurrir a la Regla 95(e).

Sobre la referida Regla 95(a)(4) ha sido dicho que incluye todo tipo de evidencia documental (libro, papel, documento), y la evidencia demostrativa, tanto real como ilustrativa. E.L. Chiesa Aponte, *Derecho procesal y penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. III, pág. 333. Explica el mismo tratadista que la Regla 95(a)(4) se activa de una de tres formas; (i) cuando la evidencia fue obtenida del acusado o pertenecía a este; (ii) **cuando el fiscal se propone utilizarla en el juicio; (iii) cuando el acusado establece "relevancia" para su defensa**. Este aspecto de relevancia debe entenderse en el mismo sentido que el aplicable al descubrimiento de resultado o informes de exámenes y de experimentos o pruebas científicas contenido en la regla que le precede. (Énfasis provisto). *Íd*, pág. 334.

Por lo explicado, lo primero que debió dirimir el TPI al evaluar el petitorio de la defensa para realizar una nueva extracción del celular era, qué prueba en particular se disponía a utilizar en el juicio el Ministerio Público respecto a la información que obtuvo del celular de su testigo, la señora Gómez Reyes. Este examen específico de la prueba que se dispone

a utilizar el Ministerio Público en el juicio en el caso del celular, (que resulta distinguible de la petición de la defensa de que el Pueblo revele con precisión toda la prueba que se dispone a utilizar en el juicio), entonces colocará en posición al Tribunal para determinar si se libra a la defensa de tener que demostrar la relevancia de la información que interesa descubrir. Es decir, identificada la prueba del contenido del celular que el Ministerio Público se dispone a utilizar en el juicio, se activaría la segunda de las formas mediante las cuales puede la defensa descubrir evidencia bajo la Regla 95(a)(4), sin tener que establecer la relevancia como paso previo a autorizar su descubrimiento. Este discernimiento sobre la prueba que se dispone a utilizar el Ministerio Público respecto al contenido del celular, claro está, precede a la autorización generalizada que hizo el TPI en favor de la defensa para que hiciera la extracción del celular *in toto*.

Pero lo anterior no dispone de todas las controversias ante nosotros, pues, por oposición a lo discutido en el párrafo que precede, aquella información del celular que el Ministerio Público **no** se disponga a utilizar como prueba en el juicio, pero la defensa interese descubrir, **sí** estaría sujeta a que la señora González Cabrera establezca en una vista su relevancia para permitir que sea descubierta. La acepción de *relevancia* en este contexto refiere a que la defensa viene llamada a establecer una ***clara demostración prima facie de su necesidad de la información requerida, o base sustancial de su materialidad***, *que evite la expedición de pesca en los archivos de fiscalía.* (Énfasis provisto). E.L. Chiesa Aponte, *Derecho procesal y penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1993, Vol. III, pág. 332.

El mismo razonamiento se impondría si se parte de la premisa de que el informe sobre extracción del celular realizado por la División de Crímenes Cibernéticos es uno de tipo científico. En este caso, pero por virtud de la Regla 94(a)(3) de Procedimiento Criminal, *supra*, resultaría

descubrible por la defensa aquella prueba científica que el Ministerio Público se dispone a utilizar en el juicio, sin necesidad de hacer una demostración sobre su relevancia. No obstante, de la defensa pretender descubrir prueba científica en posesión del Ministerio Público que este no se dispone a utilizar en el juicio, se activaría el requerimiento de probar *relevancia* discutido.

A pesar de lo indicado en los pasados párrafos, adelantamos que el examen sobre la relevancia de la prueba que se interesa descubrir por la defensa requiere aún más rigor cuando se trata, como en este caso, de la información contenida en un teléfono celular de un tercero que va a ser testigo, según más adelante elaboraremos.

Como se nota de lo hasta aquí dicho, reiteramos, la *Orden* contenida en la *Resolución* recurrida a los efectos de permitir a la defensa la extracción del celular, no se atiene al cumplimiento de los requisitos de la reglamentación explicada.

En otro orden de cosas, nos ha sorprendido la completa ausencia de discusión por las partes en sus escritos sobre la aplicación en este caso de los principios explicados en *Pueblo v. Sanders Cordero,* supra, que resulten pertinentes a la controversia ante nuestra consideración. En la situación de hechos en dicha Opinión, como parte del proceso de descubrimiento de prueba la defensa solicitó que el Ministerio Público le hiciera entrega de unos videos porque, entre otros argumentos, *podían haber sido adulterados o existía la posibilidad que se hubiesen manejado adecuadamente, para lo que necesitarían que sus peritos lo examinaran.* Ver págs. 833-848. Salta a la vista la similitud de tal argumentación, con la que presenta la defensa en este caso al insistir en el *Escrito en oposición,* (según lo hizo ante el TPI), que necesita que sus peritos efectúen la extracción del celular para, entre otros, *corroborar la integridad de la data, porque hay base suficiente para creer que la grabación* (extracción) *puede*

*haber sido alterada o modificada y no está completa*. Además, en dicho caso, tal como en el nuestro, el Ministerio Público había insistido en que la evidencia que la defensa deseaba descubrir estaba a su disposición para ser examinada e inspeccionada, en las oficinas del Fiscalía.

Sobre lo anterior, nuestro Tribunal Supremo advirtió en la Opinión citada que ***una mera alegación de que existe la posibilidad de que el video no haya sido manejado de forma apropiada no es suficiente, de por sí para ordenar su entrega***. (Énfasis provisto). *Íd.*, pág. 845. Después de todo, *el descubrimiento de prueba no conlleva necesariamente que el acusado tenga el derecho a que se le reproduzca y entregue copia de toda la prueba que solicitó, cuando existen razones de peso que impiden tal proceder, pues de ser meritorias las alegaciones del Ministerio Público, y así lo justificare un balance justo y adecuado, el tribunal puede limitar, restringir, o condicionar el descubrimiento de prueba de la manera que procediera. Íd.* pág. 844.

Siguiendo con la discusión de la misma Opinión, el Tribunal Supremo aseveró allí que cuando el Ministerio Público pone a disposición de la defensa la prueba que esta última interesa descubrir para ser examinada en las oficinas de Fiscalía, **el foro primario no puede descartar tal ofrecimiento de plano, sino que debe sopesar si ello resulta razonable**. Esto en vista de que nuestro sistema judicial exige que la prueba que a Fiscalía concierna que se admita en el juicio, debe ser autenticada ante el juzgador, y, reiteramos, el descubrimiento de prueba no conlleva necesariamente que el acusado tenga el derecho a que se le reproduzca la prueba y entregue copia de toda la prueba solicitada, cuando existen razones de peso que impiden tal proceder. (Énfasis provisto). *Íd*, pág. 844.

Valga advertir que, aunque en *Pueblo v. Sanders Cordero*, supra, los videos que la defensa deseaba descubrir presuntamente contenían

imágenes sobre transacciones de sustancias controladas en las que participó un agente encubierto, y esta fue la razón por la que se le requirió al TPI mostrar cautela al analizar la petición de reproducción de dichas imágenes por la defensa, en el caso ante nosotros no estamos ante la petición del descubrimiento de unos videos con características similares, pero **sí** ante la pretensión por la defensa **de descubrir la totalidad del contenido del teléfono celular de una testigo del Ministerio Público**. Siendo esto así, no tenemos dudas que los principios constitucionales envueltos al considerar la expectativa de intimidad que acompaña la obtención de toda la información proveniente de un teléfono celular de una testigo también exigen que el TPI muestre el mayor rigor al decidir qué información de esta permite descubrir.

Afirmamos lo anterior pues, según lo había identificado inicialmente el TPI en su muy acertada *Resolución* de 23 de julio de 2023, la jurisprudencia del Tribunal Supremo Federal y del Tribunal Supremo de Puerto Rico concerniente a la expectativa a la intimidad reconocida a la información contenida en un teléfono celular quedó bien establecida en *Riley v. California*, 573 US 373 (2014) y *Pueblo v. López Colón*, 200 DPR 273 (2018), respectivamente. En la Opinión del alto Foro federal aludida, cuyos razonamientos incorpora nuestro Tribunal Supremo en *Pueblo v. López Colón*, supra, se explicaron *in extenso* las razones por las cuales nos corresponde diferenciar entre el grado de intromisión que acontece cuando se pretende descubrir el contenido de un teléfono celular frente a cualquier otro objeto, **reconociéndole nuestro ordenamiento mayor protección al contenido del celular**. Tal distinción parte del hecho de que en los celulares se suele almacenar una cantidad de información sobre la persona sin comparación a la de cualquier objeto previo, lo que incluye récords sensitivos y extensísima información íntima, haciendo posible la reconstrucción de la vida privada de una persona a través del total de la

información allí contenida. De aquí la expresión de nuestro alto Foro en el sentido de que, *hoy un teléfono celular guarda más información de un individuo de lo que éste pudiera conservar en su casa, por ello,* **un registro podría ser más inquisitivo que un registro de la residencia de una persona**. (Énfasis provisto). *Pueblo v. López Colón*, supra, pág. 293. Según se sabe el derecho a la intimidad goza de la más alta jerarquía en nuestro ordenamiento constitucional y aplica *ex propio vigore*, sin que se necesite ley estatal que lo complemente, y es oponible entre partes privadas. *Weber Carrillo v. ELA*, 190 DPR 688 (2014); *Figueroa Ferrer v. ELA* 107 DPR 250 (1978).

Considerado todo lo expuesto, nos resulta claro que el TPI no aquilató la totalidad de las circunstancias que estaba llamado a sopesar antes de ordenar la extracción del teléfono celular de la testigo del Pueblo por los peritos de la defensa, fallando en asegurar el balance justo y adecuado que debía conseguir entre los intereses interpuestos. En este contexto no resultaba razonable que el tribunal *a quo* ordenara la extracción del celular solicitada por la defensa, para entonces determinar *a posteriori* los límites o salvaguardas a tener en consideración en tal ejercicio. Sobre lo mismo, y según como expresamente lo decidió nuestro Tribunal Supremo en *Pueblo v. Sanders Cordero,* supra, no resulta dable ordenar primero la entrega de cierta evidencia, sin antes ponderar las medidas y condiciones apropiadas que salvaguarden los intereses del Estado y los derechos del acusado, (las medidas cautelares preceden la entrega de la prueba que se solicita descubrir).

Aunque, como dijimos, de ordinario los tribunales apelativos no debemos intervenir con las determinaciones que realiza el foro primario sobre el descubrimiento de prueba, sí quedamos habilitados para ello en aquellas instancias en que su actuación constituya un abuso de discreción. *Pueblo v. Sanders Cordero,* supra. Apreciamos abuso de

discreción del TPI en la *Orden* recurrida, lo que nos impulsa a expedir el recurso de *certiorari* y ordenar la revocación de dicho dictamen interlocutorio.

Conforme a lo discutido, ordenamos que se celebre una vista para que las partes tengan la oportunidad de establecer **a través de la presentación de prueba pericial y cualquier otra pertinente,** como mínimo, lo siguiente:

1) Que el Ministerio Público identifique la prueba que se dispone a utilizar en el juicio, respecto al contenido de la información que obtuvo del celular de la testigo del Pueblo. Según explicado, identificada así la prueba del Ministerio Público, esta resultará descubrible a la defensa sin necesidad de que esta última demuestre su *relevancia.*

2) Que se ofrezca explicación técnica sobre lo que constituye la llamada *extracción* del celular aludido, cómo se hace, qué contiene, qué medidas de seguridad se establecen para velar por la integridad de la información y cadena de evidencia. De haberse excluido alguna información del contenido del celular, explicar por qué razón se excluyó,[17] (lo que no quiere decir que el Ministerio Público tenga que revelar la información que fue excluida del celular). En la misma línea, que se ilustre sobre las diferencias entre el informe de extracción y la extracción completa del contenido del celular.

3) De la defensa interesar descubrir evidencia que surja del informe de extracción, u otra del contenido del celular, más allá de la que el Ministerio Público indique que se dispone a utilizar como prueba en el juicio, tendrá que demostrar su *relevancia,* según la acepción que de dicha palabra hemos ofrecido en el cuerpo de nuestra *Sentencia,* (clara demostración *prima facie* de utilidad para la preparación de la defensa). Ello incluye, pero no se limita, a demostrar las alegaciones sobre confiabilidad o integridad de la extracción realizada por el Estado, que fueron origen de la solicitud para descubrir más información a la contenida en el informe de extracción.

4) En el ejercicio de lo requerido en el inciso que precede, el foro primario velará por la protección del derecho constitucional a la intimidad reconocido a la información contenida en un teléfono celular, según reconocido en *Pueblo v. López Colón,* supra, de modo que este ejercicio no se torne en una expedición de pesca sobre la vida privada de la testigo.

---

[17] Estamos conscientes de que, como parte de la argumentación expuesta por la Fiscal del Rosario, según recogida en la página 15 de la *Minuta* de la vista de 12 de octubre de 2023, el Ministerio Público adelantó que el informe de extracción solo incluye la información del celular pertinente al caso, con exclusión de la información que allí surgiera que fuera impertinente para el caso. Apéndice XXIV del recurso de *certiorari* KLCE2023000126.

5) Si, luego de evaluado lo anterior, y cualquier otro asunto pertinente de los discutidos en el cuerpo de nuestra Sentencia, el TPI se reiterara en la necesidad de ordenar la extracción del celular que solicita la señora González Cabrera, tendrá que imponer unas medidas cautelares antes de que se lleve a cabo tal acción. Siguiendo lo dispuesto por nuestro Tribunal Supremo en *Pueblo v. Sanders*, supra, a la página 848, como mínimo, se deberán establecer los siguientes parámetros: la fecha, hora y lugar para entregar la prueba; las personas que tendrían acceso a ella; el uso que podrían darle; el lugar y medios para custodiarla; los modos para preservar la confidencialidad del contenido; y cualquier otra condición, limitación o prohibición ineludible en el caso particular.

**Parte Dispositiva**

Por los fundamentos expuestos determinamos:

En el KLCE202400038, **no expedir** el recurso de *certiorari* solicitado.

En el KLCE202400126, **expedir** el recurso de *certiorari* presentado y **revocar** la *Resolución* recurrida. A tenor, se devuelve el asunto al foro recurrido para que lleve a cabo las directrices que sobre los asuntos discutidos en este recurso hemos ordenado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. El juez Bermúdez Torres emitió un voto concurrente en parte y disidente en parte.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>ANA LUISA GONZÁLEZ CABRERA<br><br>Peticionaria | KLCE202400038<br><br>cons. con<br><br>KLCE202400126 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Núm.<br>E FJ2023G0006<br>E EG2023G0002<br>E OP2023G0016<br><br>Sobre:<br>Art. 244 CP<br>Art. 260 CP<br>Art. 281 CP |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**VOTO CONCURRENTE EN PARTE Y DISIDENTE EN PARTE
DEL JUEZ BERMÚDEZ TORRES**

I.

Si bien concurro con la generalidad del dictamen mayoritario, me veo obligado a distanciarme de su decisión respecto a que, la defensa no tiene derecho a que el Ministerio Público le entregue la declaración jurada que utilizó el juez durante la vista de Regla 6 para ordenar el arresto de la imputada. Se fundan en que, la declarante no se ha "sentado a declarar" en el proceso. Distinto al criterio mayoritario, estoy convencido de que las declaraciones juradas utilizadas por el Ministerio Público para lograr la determinación de causa para arresto por los delitos imputados en contra de la señora González Cabrera, equivalen al testimonio de un testigo sentado en la silla testifical y, por tanto, una declaración sujeta a descubrimiento. Elaboro.

II.

La Regla 95(a)(2) de las Reglas de Procedimiento Criminal establece que una vez presentado el pliego acusatorio y luego de ser solicitado por la defensa, el Ministerio Publico deberá proveer copia de **"[c]ualquier declaración jurada de los testigos de cargo que hayan declarado en la**

**vista para determinación de causa probable para arresto o citación**".[18]
Dándole un sentido literal al texto de esta disposición reglamentaria, la Mayoría de este Panel considera que la frase "**hayan declarado en la vista para determinación de causa probable para arresto o citación**" refiere exclusivamente a "*sentarse a declarar*" y no considera el ofrecimiento de declaraciones a través de documentos juramentados. Discrepo.

Una declaración jurada ofrecida en evidencia con el propósito de que se considere su contenido y que es verdad lo que allí se dice, constituye la típica prueba de referencia inadmisible en todo proceso en el que apliquen las Reglas de Evidencia. Ciertamente, en la vista de Regla 6 un juez puede valerse de prueba de referencia inadmisible para determinar causa probable, pues en esta etapa no aplican las Regla de Evidencia. Ello, sin embargo, no altera el hecho de que, la declaración jurada es el tipo de prueba de referencia que puede ser contrainterrogada como si el declarante se hubiera sentado a declarar en la vista, conforme establece la Regla 808 de Evidencia.[19]

Según esta Regla 808, "[c]uando se admite una declaración que constituya prueba de referencia bajo las Reglas 805 a 809, la credibilidad de la persona declarante puede ser impugnada -y si es impugnada, puede ser rehabilitada- por cualquier evidencia admisible para esos propósitos si la persona declarante hubiera prestado testimonio como testigo."[20]   En el Informe rendido por Comité Asesor Permanente de Reglas de Evidencia se explicó, que:

> Esto significa que un declarante –aquél cuya declaración extrajudicial se admite bajo alguna excepción– queda sujeto a ser impugnado (o rehabilitado) a base de las mismas causales y los mismos principios que un testigo. Explican Mueller y Kirkpratrick: "[W]here an out-of-court statement is admitted as proof of what it asserts, FRE 806 leaves no doubt that a party who wishes to discredit the speaker may resort to all five of the recognized methods of impeachment." [...] El profesor Chiesa coincide con la anchura en el ámbito de la Regla en cuanto a las modalidades de impugnación: "[L]a regla no pone límite alguno en cuanto a los medios de impugnación de la credibilidad del declarante. Cualquier medio de impugnación que sirve para

---

[18] Regla 95 de Procedimiento Criminal, 34 LPRA Ap. II, R.95.
[19] 32 LPRA Ap. VI, R. 808.
[20] Íd.

impugnar un testigo que declara en corte, sirve también para impugnar la credibilidad del declarante...."[21]

Siendo la declaración jurada ofrecida en la vista de determinación de causa probable para arresto, equivalente al testimonio de un testigo sentado en la silla testifical, el Ministerio Público debe proveerle copia de la misma a la defensa. Tratar de encajonar el término *"sentarse a declarar"* a que se siente físicamente el testigo en la silla testifical, no es consistente con la teoría de estas Reglas.

Por lo anterior, me permito *concurrir* en parte, con la decisión tomada por los distinguidos compañeros de Panel y respetuosamente *disentir* en cuanto a la negativa de ordenar al Ministerio Público proveerle a la defensa copia de la declaración jurada de la señora Mary Lou Torres Reyes, utilizada en la determinación de causa para arresto.

En San Juan, Puerto Rico, a 7 de mayo de 2024.


                                                        Abelardo Bermúdez Torres
                                                        Juez de Apelaciones

---

[21] Véase: Comité Asesor Permanente de Reglas de Evidencia, Informe de las reglas de derecho probatorio, pág. 610-611 (2007).